[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 17-13048, 18-12917
_____

D.C. Docket Nos. 1:17-cv-00309-LMM; 1:18-cv-00409-LMM

ESTATE OF DAVID BASS,

Plaintiff – Appellant,

versus

REGIONS BANK, INC.,
FIDELITY INVESTMENTS INSTITUTIONAL SERVICES COMPANY, INC.,

Defendants – Appellees.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(January 21, 2020)

Before JORDAN and TJOFLAT, Circuit Judges, and SCHLESINGER,[*] District
Judge.

TJOFLAT, Circuit Judge:

---

[*] Honorable Harvey Schlesinger, Senior United States District Judge for the Middle
District of Florida, sitting by designation.

## I.

## A.

David Bass instructed Fidelity Investments ("Fidelity") to write a check to his sister-in-law, Ruth Barr, consisting of his entire retirement savings from his Fidelity 401k account. The purpose of the check was to set up an IRA account for Bass that would be administered by Ruth.

Pursuant to Bass's instructions, Fidelity sent a check to Bass made out to "Ruth A. Barr Plan Admin TR IRA FBO: David Bass." Bass reviewed the check and gave it to Ruth, who deposited the check into her general business account, entitled "B&B Accounting and Tax Services," at Regions Bank ("Regions"). She proceeded to spend all of Bass's money for personal purposes. Bass died shortly thereafter, and the administrator of his estate brought separate actions against Regions and Fidelity.[1]

## B.

Bass[2] filed multicount complaints against both Regions and Fidelity. Counts I and II in both complaints were essentially identical.

---

[1] The complaints were filed separately against Regions and Fidelity, but they were consolidated in this appeal.

[2] For simplicity, Bass's estate will be referred to merely as Bass himself.

Count I in both complaints alleges common law conversion claims against Regions and Fidelity, stating that "Defendant converted to its own use the money it removed improperly from Plaintiff's accounts."

Count II in each complaint explicitly purports to contain two theories of recovery: (1) the common law, and (2) the Georgia Uniform Commercial Code (the "Georgia UCC").  First, Count II against both Fidelity and Regions alleges common law claims for "Negligence, Lack of Good Faith, [and] Failure to Exercise Ordinary Care."  Count II states that Regions and Fidelity acted negligently, with a lack of good faith, and failed to exercise reasonable care in handling Bass's funds/account—presumably because Regions allowed Ruth to place the proceeds of the check in her general business account without inquiring whether the deposit was authorized or proper—and Fidelity disbursed the funds in the same manner.  Second, Count II alleges that, by engaging in such conduct, Regions "violat[ed] the banking laws and [Georgia] Uniform Commercial Code, including, but not limited to, Article 3 and Article 4," and Fidelity "violated the banking laws, including, but not limited to, [Georgia UCC] section 11-4-103."

Additionally, Count II in both complaints "incorporates by reference each and every allegation contained" in the preceding paragraphs of the complaints—as

3

did all of the counts in both complaints.[3]  And because Count II incorporates Count I, Bass also arguably alleges a conversion claim against both defendants under the Georgia UCC and "the banking laws."[4]

Count III, brought against only Fidelity, alleges a breach of contract.  The complaint states that the parties had a contract that "controlled, among other things, the manner in which [Fidelity] would safeguard [Bass's] funds, negotiate instruments presented to his account, and handle his funds with the necessary and proper safeguards."  Bass alleges that "[b]y, among other things, negotiating and paying an instrument with a forged, improper, and suspicious endorsement, [Fidelity] breached the parties' contract."

Count IV, also brought against only Fidelity, alleges a breach of fiduciary duty.  The general factual predicates that precede the specific counts in the

---

[3] This is known as a "shotgun pleading."  As of 2008, we had "explicitly condemned shotgun pleadings upward of fifty times."  *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 n.54 (11th Cir. 2008), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).  Shotgun pleadings are unacceptable for many reasons, but this case illustrates an important one: they result in unintelligible pleadings that violate the basic specificity requirements of Federal Rule of Civil Procedure 8(a)(2) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).  *See infra* nn. 4–5.

[4] This is a perfect example of how a shotgun pleading can render the allegations of an otherwise simple complaint unintelligible.  Both complains state in Count II that, "[i]n acting in such a manner, Defendant breached Plaintiff's rights and violated the banking laws."  Ordinarily, we could assume that "acting in such a manner" related only to the factual allegations in Count II.  However, because Count II incorporates Count I, the scope of "acting in such a manner" is significantly expanded, and that problem is drastically exacerbated each time a new count is added to a complaint.  For example, by the time a hypothetical Count IX would be alleged, no one would be able to understand what "acting in such a manner" would mean.  *See, e.g.*, *infra* n.5.

complaint state that "[d]ue to among other things, the contract and [Bass's] depositing funds with [Fidelity] for retirement, [Fidelity] owed [Bass] a fiduciary duty." Count IV asserts that Fidelity had a duty, among other things, to "conduct itself in the manner appropriate in the industry and for professionals of this type, safeguard [Bass's] funds, negotiate instruments presented to his account, and handle his funds with the necessary and proper safeguards," and that Fidelity violated this duty "[b]y, among other things, negotiating and paying an instrument with a forged, improper, and suspicious endorsement."[5]

## C.

Both Regions and Fidelity moved to dismiss Bass's complaints pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

Although Count II alleged only that Regions and Fidelity had violated unspecified provisions of the Georgia UCC and "the banking laws," Regions and

---

[5] The complaints also seek costs, attorneys' fees, and punitive damages in separate counts. These claims further exemplify the *Iqbal* problems created by shotgun pleadings. For example, the complaints state that "Defendant's conduct has caused Plaintiff unnecessary trouble and expense and required him to hire counsel and institute this legal action. . . . As a result of Defendant's intentional conduct and bad faith, Plaintiff is entitled to recover from Defendant all of his costs and legal expenses incurred in this action." Further, they assert that "[b]ecause the conduct of Defendant was intentional, deliberate, reckless, and in conscious disregard for the consequences of its actions[,] . . . Defendant is liable for punitive damages." These assertions result in the obvious question—what "conduct" is Bass referring to? No one could know. We would have to guess at what "conduct" the complaint was referring to because, when dealing with a shotgun complaint, the answer is always "everything that the plaintiff has previously mentioned anywhere in the complaint." Complaints with such obvious deficiencies clearly run afoul of the specificity required by Rule 8(a)(2) and *Iqbal*, and therefore we reiterate that they are unacceptable in this Circuit.

Fidelity argued that Bass's Georgia UCC and "banking law" claims should be dismissed under Rule 12(b)(1), *in their entirety*, because Bass allegedly did not have standing to bring a conversion claim under *one specific section* of the Georgia UCC—namely, Georgia Code § 11-3-420.[6]  As we discuss below in Part V, this argument is nonsensical because Count II in each complaint alleges that Regions and Fidelity violated unspecified provisions of the Georgia UCC and "the banking laws," generally.  Therefore, it does not matter whether Bass lacks standing to bring a claim under one specific section of the code—namely, § 11-3-420[7]— because he may have standing to bring a claim under quite literally any other provision of the Georgia UCC or "the banking laws."

Regions and Fidelity also argued that Bass's Georgia UCC and "banking law" claims should be dismissed under Rule 12(b)(6) because (1) he could not state

---

[6] The full text of the statute is as follows:

> The law applicable to conversion of personal property applies to instruments.  An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.  An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument; or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

Ga. Code Ann. § 11-3-420(a).

[7] We have grave doubts that Bass lacks standing to bring his claims under § 11-3-420. *See infra* n.11.

6

a prima facie case of conversion under § 11-3-420, and (2) his common law claims were preempted by § 11-3-420.

Regarding the breach of contract and breach of fiduciary duty claims brought only against Fidelity in Count III and Count IV, Fidelity moved to dismiss under Rule 12(b)(6), arguing that neither count stated a claim for relief.

The District Court granted both Regions's and Fidelity's Rule 12(b)(1) motions, finding that Bass lacked standing to bring the Georgia UCC claims.  The Court also agreed with Regions and Fidelity that Bass's common law claims for conversion, negligence, breach of contract, and breach of fiduciary duty were preempted by Georgia's UCC.

Apart from preemption, the Court also dismissed Bass's Count III and Count IV claims against Fidelity for breach of contract and breach of fiduciary duty under Rule 12(b)(6) because he "fail[ed] to state sufficient facts regarding the specific nature of the breach or the existence of the contract itself," and because he did not "plausibly ple[a]d [that] a fiduciary relationship existed between [himself] and [Fidelity]"—he "merely assert[ed]" that Fidelity owed him a fiduciary duty "without any factual support."  Bass appeals.

### D.

We conclude that the District Court properly granted Fidelity's Rule 12(b)(6) motion regarding Bass's Count III breach of contract and Count IV breach

7

of fiduciary duty claims.  However, we vacate the District Court's Rule 12(b)(1)

dismissals of Bass's Count II Georgia UCC claims in both complains because

those rulings are incapable of meaningful review.  Finally, we affirm the District

Court's dismissal of Bass's Count I common law conversion and Count II common

law negligence claims because they are preempted by Georgia Code § 11-3-420.

Accordingly, we affirm in part, vacate in part, and remand for further

consideration.

## II.

We review a district court's dismissal pursuant to Rule 12(b)(1) or Rule

12(b)(6) of the Federal Rules of Civil Procedure *de novo*.  *Lord Abbett Mun.*

*Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1205–06 (11th Cir. 2012).

## III.

A civil complaint filed in federal court must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

P. 8(a)(2).  Under well-settled Supreme Court precedent, this means that "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949

(quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).

When a plaintiff files a shotgun pleading, he fails to satisfy these basic

requirements.  Such a pleading is never plain because it is impossible to

8

comprehend which specific factual allegations the plaintiff intends to support which of his causes of action, or how they do so. It is not the proper function of courts in this Circuit to parse out such incomprehensible allegations, *see Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1355 n.6 (11th Cir. 2018), which is why we have stated that a district court that receives a shotgun pleading should strike it and instruct counsel to replead the case—even if the other party does not move the court to strike the pleading, *id.* at 1357–58. Accordingly, here, the District Court should have struck the complaints and given Bass an opportunity to amend them in compliance with Rule 8(a)(2) and *Iqbal*. But the Court did not do so. Therefore, once again, we are forced to review a judgment that should never have been entered. Below, we review that judgment to the extent that it is scrutable.

## IV.

We first address Bass's Count III breach of contract claim against Fidelity. We agree with the District Court that Bass has failed to state a claim.

To prove a breach of contract claim under Georgia law, a plaintiff must show (1) breach, (2) the resultant damages that he suffered, and (3) that he "has the right to complain about the contract being broken." *Kuritzky v. Emory Univ.*, 669 S.E.2d 179, 181 (Ga. Ct. App. 2008).

The District Court noted that Bass only "generally asserted" a breach of contract, without identifying "any provisions or any specific agreements that were

breached, nor excerpt[ing] any relevant portions of an agreement to allege the existence of a valid contract." We agree that this was insufficient to state a claim because Bass has not alleged any general or specific provision of any contract that Fidelity might have breached.[8] Bass, therefore, failed to meet his pleading requirements. *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965)). Consequently, the District Court properly dismissed Bass's breach of contract claim.

## V.

We next address Bass's Count IV breach of fiduciary duty claim against Fidelity. We agree with the District Court that Bass has failed to state a claim.

To prove a breach of fiduciary duty under Georgia law, a plaintiff must show "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Griffin v. Fowler*, 579 S.E.2d 848, 850 (Ga. Ct. App. 2003). A fiduciary duty exists "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or

---

[8] Moreover, we cannot see how Fidelity could have breached any contract regarding the handling of Bass's funds when Fidelity followed Bass's precise instructions and the check was personally examined and approved by Bass before he gave it to Ruth.

where, from a similar relationship of mutual confidence, the law requires the utmost good faith."  Ga. Code Ann. § 23-2-58.

Bass's complaint states that "[d]ue to among other things, the contract and [Bass's] depositing funds with [Fidelity] for retirement, [Fidelity] owed [Bass] a fiduciary duty."  We agree with the District Court that this legal conclusion lacks factual support, and therefore we are not bound to accept the assertion as true.  *See Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965 (noting that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986))).

The complaint does not state any facts that establish that Fidelity "exercise[d] a controlling influence over [Bass's] will," or owed him "the utmost good faith" under Georgia Code § 23-2-58.  Nor does the complaint allege the duties, if any, imposed by contract between Bass and Fidelity.  *See Hines v. FiServe, Inc.*, No. 8:08-cv-2569-T-30AEP, 2010 WL 1249838, at *2–*3 (M.D. Fla. March 25, 2010) (finding that the custodian of a non-discretionary IRA did not owe fiduciary duties to the IRA beneficiaries where the IRA agreements did not create such duties).  So far as we can tell, Fidelity and Bass had an arm's-length business relationship in which Fidelity was required to handle Bass's money as he directed.  And that is exactly what Fidelity did here.  Fidelity followed Bass's exact instructions in issuing the check, which was personally examined and

11

approved by Bass, to Ruth.  Absent any facts that explain how, in so acting, Fidelity breached any contractual agreement between the parties, or the source, scope, and nature of an extra-contractual fiduciary duty that Fidelity owed Bass, Bass cannot state a claim for breach of fiduciary duty.

Accordingly, the District Court properly dismissed Bass's breach of fiduciary duty claim because Bass failed to adequately plead (1) that a fiduciary duty existed under Georgia Code § 23-2-58, and (2) that Fidelity breached any duty it owed to Bass when it followed his explicit instructions regarding the check.

VI.

We now turn to the District Court's dismissals of the Count II Georgia UCC claims under Rule 12(b)(1).  We find that these rulings are incapable of meaningful review, and we therefore vacate them and remand the matter to the District Court.

Bass's Count II Georgia UCC claims generally alleged that Regions and Fidelity violated unspecified provisions of Georgia's UCC and "the banking laws."[9]  It is true that Bass specifically mentioned Georgia Code § 11-4-103 and Articles 3 and 4 of the Georgia UCC, but his claims are explicitly not limited to those provisions.[10]  Therefore, even if the District Court was correct that Bass does

---

[9] Remember, this is only a portion of the Count II claims because Count II in each complaint also contained a common law claim for negligence.

[10] Even if his claims were confined to Articles 3 and 4 of the Georgia UCC, those articles encompass more than 175 pages of text in the print version of the statute.

12

not have standing to bring a claim under Georgia Code § 11-3-420,[11] he may have standing to bring any number of claims under any other provision of the Georgia UCC or "the banking laws."  As a result, the District Court's ruling is either irrelevant because Bass's Count II Georgia UCC claims were not brought under § 11-3-420, or it is incomplete because Bass might have standing to bring a claim under a different provision of the Georgia UCC.  Therefore, we vacate the District

---

[11] We have serious doubts that such a ruling would be correct.  The primary support for this position is *Midwest Feeders, Inc. v. Regions Bank, Inc.*, No. 1:15-CV-00013, 2016 WL 5796894, at *1 (M.D. Ga. Sept. 30, 2016), *aff'd*, 707 F. App'x 952 (11th Cir. 2018), an unpublished district court opinion from the Middle District of Georgia.  But the District Court—and this Court on appeal—misinterpreted (1) the Georgia UCC and (2) Georgia precedent.

First, the District Court in *Midwest Feeders* ignored that the reference to Georgia Code § 11-3-301 in § 11-3-420 is only relevant for determining whether a *third party*—i.e., the person whom the bank allegedly improperly paid—was entitled to enforce an instrument.  Therefore, there is no statutory basis to conclude that § 11-3-301's incorporation into § 11-3-420 limits a plaintiff's standing to bring a claim under § 11-3-420.

Second, the District Court in *Midwest Feeders* misapplied Georgia precedent, and therefore there is no basis in Georgia caselaw to justify the District Court's holding.  The District Court relied on *Jenkins v. Wachovia Bank, Nat'l Ass'n*, 711 S.E.2d 80 (Ga. Ct. App. 2011), for the proposition that a "plaintiff with no right to enforce an allegedly converted check lack[s] standing to bring a conversion claim under the Georgia UCC."  *Midwest Feeders*, 2016 WL 5796894, at *4.  But that is not what *Jenkins* held.

*Jenkins* held that a plaintiff cannot recover under various tort provisions of the Georgia Code (1) if the plaintiff has no ownership or legal interest in a check because the language of § 11-3-420, itself, explicitly precludes her from bringing a conversion claim, and (2) if the plaintiff also is not entitled to enforce the check at issue under § 11-3-301, because in such circumstances the plaintiff has suffered neither a violation of a legal right to the check nor any damages.  711 S.E.2d at 84.  Therefore, *at most*, being entitled to enforce the check at issue is *one factor* to be considered in determining whether the Georgia Code provides a statutory right to recover in tort when a check is allegedly misappropriated.  Accordingly, it is clear that the District Court in *Midwest Feeders*—and this Court on appeal—erred in holding that *Jenkins* established a *per se* rule that a lack of entitlement to enforce a check under § 11-3-301 is sufficient, standing alone, to bar a plaintiff's conversion claim in federal court on Article III standing grounds.

13

Court's dismissals under Rule 12(b)(1).  On remand, we suggest that the District Court instruct Bass to reallege his Georgia UCC claims, provided they have support in the law, in accordance with the pleading requirements of Rule 8 set forth by the Supreme Court in *Twombly* and *Iqbal*, so that it can enter a proper judgment on the issue.

## VII.

Finally, we address the District Court's preemption rulings.  We find that the District Court properly dismissed Bass's common law conversion and negligence claims on preemption grounds.[12]

Georgia Code § 11-1-103(b) states that "the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause shall supplement [the Georgia UCC's] provisions."   Therefore, "[a] common law tort action . . . may sometimes lie even where the transaction is one governed by the U.C.C., because the U.C.C. does not purport to preempt the entire body of law affecting the rights and obligations of parties to a commercial transaction."  *Crosson v. Lancaster*, 427

---

[12] Unlike the District Court's rulings regarding standing, which we found incapable of meaningful review, we can adequately review the District Court's preemption rulings because Bass's common law claims are preempted if *any* provision of the Georgia UCC preempts his claims.  Therefore, the vagueness of the complaint does not preclude our review because § 11-3-420, by itself, is sufficient to preempt Bass's common law conversion and negligence claims.

14

S.E.2d 864, 866 (Ga. Ct. App. 1993).  However, there is one exception where the Georgia UCC preempts common law claims—namely, if the cause of action is "displaced by the particular provisions" of the Georgia UCC.  Ga. Code Ann. § 11-1-103(b).

One such provision is Georgia Code § 11-3-420, which governs the conversion of instruments.  More specifically, for our purposes, § 11-3-420 dictates under what circumstances a person can recover from a bank when the bank improperly pays the proceeds of a check to a third party.  Ga. Code Ann. § 11-3-420(a).  Therefore, our task is to determine whether § 11-3-420 displaces Bass's common law conversion and negligence claims.  We conclude that it does.

Although no Georgia court has ever stated a precise test for determining whether a common law cause of action is "displaced by the particular provisions" of the Georgia UCC, courts have noted a few considerations that are important: (1) whether the code "provides a comprehensive remedy for the parties to a transaction," *First Ga. Bank v. Webster*, 308 S.E.2d 579, 581 (Ga. Ct. App. 1983); (2) whether the code "expressly articulates the legal duties of the parties," *Promissor, Inc. v. Branch Bank and Tr. Co.*, No. 1:08-CV-1704-BBM, 2008 WL 5549451, at *3 (N.D. Ga. Oct. 31, 2008); (3) whether a common law action would generally "thwart the purposes of the Code," *id.*; and (4) whether allowing a

15

parallel common law action would "introduc[e] conflicting burdens of proof and potentially allow[] for inconsistent verdicts." *Id*. at *4.

Here, we agree with the District Court that § 11-3-420 preempts Bass's common law claims for conversion and negligence.  First, § 11-3-420 provides Bass with a "comprehensive remedy" for the exact conduct alleged in his complaints—namely, that Regions and Fidelity improperly paid the proceeds of the check into the suspicious account of a third party.  Second, allowing a parallel common law action would "thwart the purposes of the Code" by introducing conflicting burdens of proof and potentially allowing for inconsistent verdicts because common law claims for conversion and negligence both require proof of completely different elements than those required to state a § 11-3-420 claim.[13]   In other words, because the Georgia UCC explicitly defines when a plaintiff may recover in circumstances such as this, it would undermine the statutory scheme to allow Bass to circumvent the Georgia UCC's provisions by simultaneously

---

[13] For example, a common law conversion claim under Georgia law requires proof of "(1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property," *Johnson v. First Union Nat'l Bank*, 567 S.E.2d 44, 48 (Ga. Ct. App. 2002), and a common law negligence claim requires proof of "[(1)] [a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm," (2) a breach, "(3) a legally attributable causal connection between the conduct and the resulting injury," and (4) damages.  *Lee St. Auto Sales, Inc. v. Warren*, 116 S.E.2d 243, 245 (Ga. Ct. App. 1960).  Most of these elements, if not all, are completely different than those required to prove a claim under Georgia Code § 11-3-420, which would require Bass to prove only that Regions and Fidelity made a payment to someone "not entitled to enforce the instrument or receive payment."  Ga. Code Ann. § 11-3-420(a).

litigating the same claims under two different legal standards—i.e., the common law and the Georgia UCC.  Therefore, the District Court properly held that § 11-3-420 preempts Bass's common law conversion and negligence claims.

## VIII.

Accordingly, the judgment of the District Court is

**AFFIRMED in part, VACATED in part, and REMANDED for further consideration.**