[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13959

Non-Argument Calendar

_____

ABRAM GLADNEY,
by and through his Attorney in Fact,
Gladney; Abram-A,

                                        Plaintiff-Appellant,

*versus*

CONSUMERS CREDIT UNION,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

D.C. Docket No. 1:23-cv-03302-MHC

_____

Before ROSENBAUM, GRANT, and HULL, Circuit Judges.

PER CURIAM:

Abram Gladney, *pro se*, appeals the district court's dismissal of his *pro se* civil complaint against Consumers Credit Union ("CCU"), with whom Gladney refinanced his car loan, for failure to state a claim. Gladney also appeals the denial of his subsequent motion for reconsideration. After review, we affirm both rulings.

## I. FACTUAL ALLEGATIONS

Gladney's amended complaint, the operative complaint on appeal, alleged as follows.[1] On September 19, 2022, Gladney applied to CCU to refinance "the collateral" on his 2021 Nissan Altima. CCU's CFO, Sean Bowers, accepted Gladney's application and "created a contract and an account with GLADNEY" with account number 8093416820. Gladney alleged that Bowers's acceptance of the application "formed [a] contract" between Gladney and CCU and imposed a fiduciary duty to properly manage his account.

Thereafter, Gladney unknowingly "proceed[ed] to give unearned interest" to CCU every month (September to

---

[1] While we accept as true Gladney's factual allegations, we omit his numerous conclusory allegations and legal conclusions. *See Warren Tech., Inc. v. UL LLC*, 962 F.3d 1324, 1328 (11th Cir. 2020).

December), for a total of $1,985.98 by December 27, 2022. On that date, Gladney "sign[ed] an ACH Origination Agreement for [CCU] to stop automatically withdrawing the unearned interest" from his checking account. Gladney also requested that CCU send his monthly statements by mail rather than by electronic communications.

When Gladney did not receive his February statement by mail, he called CCU's Contact Center two times and was told each time that he would receive a paper statement soon. By March 15, 2023, Gladney began receiving calls from CCU's Collections Department stating that (1) there was a balance due on the account of $651.92, and (2) that if he did not pay the balance, CCU would "repossess the collateral they used for borrowing GLADNEY's security."

On March 16, 2023, Gladney called CCU's Contact Center for a third time. At Gladney's request, CCU's representative emailed him a copy of the February statement, which indicated that payment of $651.92 was due on March 21, 2023. Gladney sent the $651.92 payment "to temporarily perform his contractual obligation," but he believed "he would be owed that money back."

On April 12, 2023, Gladney received his first paper statement, which showed "a positive balance." Gladney "deduce[d] that the positive balance on the bill was the interest [CCU] owed [him]" as the account owner.

On April 12, 2023, Gladney "negotiated the bill . . . back to Bowers, with [written] instructions" to apply the interest CCU

owed him to his account number 8093416820 as a set off each billing cycle. Gladney further instructed Bowers to respond in writing within five days and, if Bowers did not do so, Gladney would assume the instructions had been carried out. Gladney sent this "package with the negotiated instrument and letter of instructions" to CCU by mail and heard nothing back from Bowers. Gladney sent similar packages to Bowers on April 20, 2023 and April 28, 2023, and each time, he received no response from Bowers. Instead, Gladney received a notice from CCU's Collections Department stating Gladney was in default due to late payments.

## II. PROCEDURAL HISTORY

### A. Unopposed Motion to Dismiss Gladney's Amended Complaint

Gladney filed this action against CCU in Georgia state court. Then, in response to a motion to dismiss, Gladney filed an amended complaint. Gladney's amended complaint alleged two federal claims and two state law claims. Gladney's federal claims included securities fraud in violation of § 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, and a violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1962, 1964(c). Gladney's state law claims were for breach of fiduciary duty and breach of contract under Georgia law. Gladney also sought compensatory damages, punitive damages, and an injunction

against repossession of his car.  Gladney also filed a motion for a preliminary injunction.

CCU removed the action to federal court based on federal question jurisdiction.  On August 3, 2023, CCU moved to dismiss Gladney's amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Under the Northern District of Georgia's Local Rules and the Federal Rules of Civil Procedure, Gladney had 17 days to file a response to CCU's motion.  *See* L.R. 7.1(B), N.D.Ga. (requiring responses to be filed within 14 days of service of the motion); Fed. R. Civ. P. 6(d) (allowing three additional days if the motion is served by mail).  Gladney did not file a timely response or request an extension of time in which to do so.

## B.    Dismissal Order

On August 22, 2023, the district court issued an order denying Gladney's motion for a preliminary injunction and granting CCU's motion to dismiss.  As to Gladney's request for a preliminary injunction, the district court concluded Gladney had failed to show a substantial likelihood of success on the merits for any of his claims.[2]  As to CCU's motion to dismiss, the district court first noted that Gladney had failed to respond, rendering CCU's motion to dismiss unopposed.  Next, the district court addressed the merits of each claim and concluded Gladney's amended

---

[2] On appeal, Gladney raises no issue as to the district court's denial of his motion for a preliminary injunction, and we do not discuss it further.

complaint failed to allege sufficient factual allegations to state a claim. Accordingly, the district court also concluded as a matter of law that Gladney was not entitled to punitive damages.

**C.    Gladney's Untimely Response and Motion for Reconsideration**

More than a week later, on September 1, 2023, Gladney filed an untimely response opposing CCU's August 3, 2023 motion to dismiss. Gladney argued that he had sufficiently alleged facts to support each of his claims and was entitled to punitive damages. In his September 1 response, Gladney also provided more detailed allegations for each claim. For example, Gladney stated that the monthly payment coupons CCU sent him and that he endorsed back to CCU were "securities" and that CCU made material misrepresentations in them as to the amount of interest Gladney owed. Gladney's response also specifically identified CCU's failure to apply the interest CCU allegedly owed him back to his account as both the breach of a contract and of a fiduciary duty. And his response claimed CCU violated the RICO statute when it attempted to obtain money from him under the pretense that he had defaulted on his account.

On September 8, 2023, Gladney filed a motion for reconsideration of the district court's August 22, 2023 dismissal order. Gladney's motion for reconsideration did not challenge the merits of the dismissal order. Instead, it argued Gladney's failure to file a timely response to CCU's motion to dismiss was "due to excusable neglect." Gladney cited, among other things, his *pro se*

status, unfamiliarity with the federal rules, lack of access to the electronic filing system, inflexible work schedule, car issues, eviction during the week of August 17, 2023, and incarceration from August 21 to 23, 2023. Gladney claimed that the earliest he could file his response was September 1, 2023. Gladney attached several documents, including court documents pertaining to his August 18, 2023 eviction and August 21, 2023 traffic court proceedings.

### D.    Denial of Motion for Reconsideration

On November 8, 2023, the district court denied Gladney's motion for reconsideration. The district court reiterated that Gladney's response was untimely and stressed that Gladney had not moved for an extension or for permission to file an out-of-time response. The district court noted Gladney's reasons for not filing a timely response, but concluded they did not "explain[ ] why [he] could not have prepared his response during the two-week period following the filing of [CCU's] Motion to Dismiss on August 3, 2023, or, alternatively, why [Gladney] could not have filed a motion to extend the time to file his response prior to the expiration of the permitted time period for filing a response." The district court explained that Gladney's *pro se* status did not excuse him from complying with the Local Rules or the Federal Rules of Civil Procedure.

Alternatively, the district court concluded Gladney's motion for reconsideration—which offered only "excuses for his failure to file a timely response"—did not point to any newly discovered

evidence, intervening changes in the law, or a clear error of law or fact in the district court's dismissal order.  Finally, the district court stated that, even assuming Gladney "meant to incorporate into his Motion for Reconsideration the argument he makes in his late-filed opposition to [CCU's] Motion to Dismiss," the court had reviewed those arguments and found that none "provide a ground under which [it] should reconsider it[s] prior Order."

Gladney timely appealed.

## III.  DISCUSSION

### A.  Standard of Review

We review *de novo* a district court's grant of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff.  *Turner v. Williams*, 65 F.4th 564, 577 (11th Cir. 2023).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.* (quotation marks omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, that states a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint must provide more than labels and conclusions, and threadbare recitals of the elements of a claim supported only by conclusory statements will not suffice to survive a Rule 12(b)(6) motion.  *Turner*, 65 F.4th at 577.  While we hold "the allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers," we cannot "serve as *de facto*

counsel" or "rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quotation marks omitted).

## B. Dismissal of Gladney's Amended Complaint

Here, the district court did not err in granting CCU's motion to dismiss because Gladney's amended complaint failed to state any claim.

### 1. Securities Fraud Claim

First, as to his securities fraud claim, Gladney concedes that his amended complaint failed to plausibly plead a claim, and we agree. Gladney's amended complaint failed to allege with particularity facts showing a material misrepresentation by CCU, much less one made with the requisite "scienter" and in "connection with the purchase or sale of a security." *See Findwhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1295-96 (11th Cir. 2011) (explaining that the heightened pleading requirements for securities fraud claims require, among other things, that the complaint specify each allegedly misleading statement, the reasons why the statement was misleading, and the facts giving rise to a strong inference the defendant acted with the required state of mind); Fed. R. Civ. P. 9(b).

Further, as to misrepresentations, Gladney's amended complaint alleged that he instructed CCU to apply the interest he believed he was owed to his account balance as an offset, but it did not allege that CCU told him it would do so. Rather, the only CCU statements identified in Gladney's amended complaint were

Contact Center representatives' comments about his request to receive paper statements and the Collection Department's statements that Gladney was late on his monthly payments and his car could be repossessed. The amended complaint does not explain how any of those statements were false or misleading, were made with the intent to deceive or defraud him, or were made in connection with the sale or purchase of securities.

On appeal, Gladney contends that his response to CCU's motion to dismiss cured the deficiencies in his amended complaint "and made his security fraud claim plausible." There are at least two problems with this argument. First, Gladney's response was untimely, a fact he does not dispute. Second, Gladney did not file a separate motion seeking leave to amend further his complaint to add those purportedly curative factual allegations in his response. *See* Fed. R. Civ. P. 15(a)(2) (requiring the opposing party's consent or the court's leave to amend a complaint a second time); *Advance Trust & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, 93 F.4th 1315, 1336-38 (11th Cir. 2024) (holding a plaintiff must file a separate motion for leave to amend setting forth the substance of the proposed amendments and cannot request such leave in the brief opposing a motion to dismiss). This latter detail is important because on a motion to dismiss a district court's review is limited to the face of the complaint and any documents it refers to that are central to the claims alleged. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).

At bottom, Gladney could not cure the deficiencies in his amended complaint by asserting additional facts in his response to CCU's motion to dismiss, whether that response was timely or not. *Cf. Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (concluding a "plaintiff may not amend her complaint through argument in a brief opposing summary judgment").

2. RICO Claim

Gladney's federal civil RICO claim fairs no better. To assert a claim under 18 U.S.C. § 1964(c), a plaintiff must allege (1) "a violation of 18 U.S.C. § 1962," the RICO criminal statute; (2) injury to business or property; and (3) causation. *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017). "Essential to any successful RICO claim are the basic requirements of establishing a RICO enterprise and a 'pattern of racketeering activity.'" *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004). To successfully allege a pattern of racketeering activity, the plaintiff must allege that (1) the defendant committed two or more predicate acts within a ten-year time space; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature. *Id.*

Here, Gladney did not allege any facts showing that CCU engaged in even one predicate act demonstrating criminal conduct within the meaning of the RICO statutes, much less ongoing criminal activity. *See id.* In his RICO count, Gladney's amended complaint alleged only that CCU "engaged in commerce," owed him "a fiduciary duty," and "interfered with the conduction of

commerce on more than one occasion" in a way that caused him harm and was "not in his best interests." These vague allegations are not sufficient to plausibly allege that CCU engaged in racketeering conduct in violation of § 1962. *See Almanza*, 851 F.3d at 1066.

### 3. Breach of Fiduciary Duty Claim

As for Gladney's claim of breach of a fiduciary duty under Georgia law, to show a fiduciary duty, the plaintiff must allege facts showing that "one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith." *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1359 (11th Cir. 2020) (quoting O.C.G.A. § 23-2-58).

Gladney's amended complaint does not allege facts showing that CCU had a fiduciary duty to Gladney. Gladney did not allege that CCU exercised a controlling influence over his will, conduct, and interest. Gladney did allege that he and CCU were in a lender-borrower relationship. But under Georgia law, such relationships generally do not give rise to a fiduciary duty on the part of the lender. *Russell v. Barnett Banks, Inc.*, 527 S.E.2d 25, 26-27 (Ga. Ct. App. 1999) (explaining that there is no fiduciary duty because the borrower and the lender have opposite interests); *Gwinnett Cmty. Bank v. Arlington Cap., LLC*, 757 S.E.2d 239, 245 (Ga. Ct. App. 2014). A fiduciary duty also can be created by agreement of the parties. *PNC Fin. Servs. Grp., Inc. v. Gibson*, ___ S.E.2d ___, 2024 WL 1984082, *5-6 (Ga. Ct. App. May 6, 2024). But Gladney's amended

complaint did not include any allegations of specific contract terms, much less such terms giving rise to a fiduciary duty.

### 4. Breach of Contract Claim

This brings us to Gladney's breach of contract claim. Under Georgia law, the elements of a breach of contract claim are "(1) breach, (2) the resultant damages that [the plaintiff] suffered, and (3) that he has the right to complain about the contract being broken." *Est. of Bass*, 947 F.3d at 1358 (quotation marks omitted). A general assertion of a breach of contract is not sufficient to state a claim; rather, the plaintiff must allege the specific provision or provisions that were allegedly breached to allege the existence of a valid contract. *Id.*

Gladney's amended complaint alleged only generally that CCU created a contract with him by accepting his refinance application. Gladney did not identify any particular provision of the contract that CCU allegedly breached, he did not provide excerpts of relevant portions of the contract, and he did not attach a copy of the contract to his amended complaint. Therefore, he did not sufficiently allege the existence of a contract that was breached. *See id.* Moreover, to the extent Gladney's amended complaint could be liberally construed to allege that CCU failed to perform its obligation to apply the interest he allegedly was owed to his account, he failed to allege any provision of the contract that required CCU to do so.

We recognize that Gladney's amended complaint alleged that CCU "was in a contractual relationship" with him and owed

him a duty "to act in good faith and deal with him fairly." While under Georgia law "[e]very contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement," that "covenant cannot be breached apart from the contract provisions that it modifies and therefore cannot provide an independent basis for liability." *Layer v. Clipper Petroleum, Inc.*, 735 S.E.2d 65, 73 (Ga. Ct. App. 2012) (quotation marks omitted). Thus, "[t]here is no independent cause of action for violation of a duty of good faith and fair dealing in the performance of a contract apart from breach of an express term of the contract." *Bankston v. RES-GA Twelve, LLC*, 779 S.E.2d 80, 82 (Ga. Ct. App. 2015). Because Gladney failed to allege any provisions of his contract with CCU that were breached, he also failed to allege a claim for breach of the duty of good faith and fair dealing under that contract. *See id.*

### 5. Punitive Damages

Finally, as for Gladney's punitive damages claim, under Georgia law, punitive damages cannot be awarded for a breach of contract absent a showing of tortious conduct by the defendant. *Pers. Concierge MD, LLC v. SG Echo, LLC*, 890 S.E.2d 334, 342 (Ga. Ct. App. 2023). A breach of fiduciary duty, on the other hand, can support an award of punitive damages. *Kilburn v. Young*, 569 S.E.2d 879, 883 (Ga. Ct. App. 2002). But for the reasons already discussed, Gladney's amended complaint failed plausibly to allege CCU breached a fiduciary duty. Therefore, the district court properly dismissed Gladney's punitive damages claim. *See OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1357 n.8 (11th Cir.

2008) (explaining that under O.C.G.A. § 51-12-5.1, a claim for punitive damages cannot survive "without an award of relief on an underlying claim").

## C.    Denial of Rule 60(b) Motion

Under Federal Rule of Civil Procedure 60(b)(1), the district court may relieve a party from a final judgment, order, or proceeding for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). We review the denial of a Rule 60(b) motion for an abuse of discretion. *Maradiaga v. United States*, 679 F.3d 1286, 1291 (11th Cir. 2012).

On appeal, Gladney argues his motion for reconsideration showed his late-filed response was due to excusable neglect under Rule 60(b)(1).[3] We need not consider Gladney's excusable neglect argument, however, because the district court's alternative ruling—that, even considering the arguments in Gladney's untimely response, Gladney's amended complaint was properly dismissed for failure to state a claim—is correct. For the reasons already discussed, Gladney's amended complaint failed to state any claim that was plausible on its face. Gladney's response to the motion to dismiss could not cure those deficiencies in his amended

---

[3] Although the district court appears to have considered Gladney's motion for reconsideration under *both* Rule 60(b) and Federal Rule of Civil Procedure 59(e), Gladney's motion focused *solely* on his reasons for failing to file a timely response to the motion to dismiss and did not address the merits of the district court's dismissal of his claims. Thus, Gladney's reconsideration motion is best characterized as a motion under Rule 60(b). *See Finch v. City of Vernon*, 845 F.2d 256, 258-59 (11th Cir. 1988).

complaint, and he did not request leave to file a second amended complaint. Because Gladney's amended complaint failed to state a claim for relief, the district court did not abuse its discretion by denying Gladney's Rule 60(b)(1) motion.

## IV. CONCLUSION

For the forgoing reasons, the district court did not err in granting CCU's motion to dismiss Gladney's amended complaint for failure to state a claim or abuse its discretion in denying Gladney's Rule 60(b) motion based on excusable neglect.

**AFFIRMED.**